UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IQBAL BHOMBAL, individually and as next friend of minor Z.B., | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:17-CV-2583-B |
| IRVING INDEPENDENT SCHOOL DISTRICT and LINDSAY SANDERS, in her individual capacity, | § § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Irving Independent School District's (IISD) motion to dismiss, Doc. 10, and Defendant Lindsay Sanders' (Principal Sanders) motion to dismiss, Doc. 11. For the reasons that follow, the Court **GRANTS** Defendants' motions.

## I.

## BACKGROUND[1]

Plaintiff Iqbal Bhombal (Bhombal) filed suit individually and on behalf of his minor child, Z.B., for violations of 42 U.S.C. § 1983 and Title VI, and for state-law intentional infliction of emotional distress. Doc. 1, Compl. ¶¶ 18, 21, 26, 28. Bhombal's claims stem primarily from an incident at John Haley Elementary School, which Z.B. attended during the 2016–2017 school year. *Id.* ¶ 7. On March 9, 2017, several students reported that Z.B. had a bomb in his lunch box and

---

[1]The Court draws its factual history from the parties' pleadings. Any contested fact is identified as the contention of a particular party.

- 1 -

called him "Tally," shorthand for the Taliban. *Id.* Nothing came of the incident until March 23, 2017, when Principal Sanders called a meeting with Bhombal and Z.B. to discuss the incident. *Id.* Principal Sanders issued Z.B. a one-day in-school suspension. *Id.* On March 27, Z.B. was called again to Principal Sanders' office to discuss the incident. *Id.* ¶ 8. Bhombal was not told about this second meeting even though he had requested that the school refrain from questioning Z.B. unless one of his parents was present. *Id.* When Bhombal discovered Z.B. had been questioned again, he removed Z.B. from school. *Id.* Later that afternoon, the Irving Police arrived at Bhombal's home and issued him a criminal trespass warning that prevents him from setting foot on IISD property. *Id.* Bhombal appealed Z.B.'s suspension and issuance of the criminal trespass warning but his appeal was denied. *Id.* In May 2017, Z.B. was involved in an altercation with other fourth-grade boys and was later assigned to a different elementary school for the 2017–2018 school year. *Id.* ¶ 14.

After Bhombal filed suit, IISD and Principal Sanders filed separate motions to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Doc. 10; Doc. 11. Bhombal filed one response addressing both Defendants' motions, Doc. 18, and IISD and Principal Sanders filed a joint reply, Doc. 21. Thus, Defendants' motions are ripe for review.

## II.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d

191, 205 (5th Cir. 2007). But the court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When well-pleaded facts fail to achieve this plausibility standard, "the complaint has alleged — but it has not shown — that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks and alterations omitted).

## III.

## ANALYSIS

A.   *Section 1983 Claims*

Bhombal claims IISD and Principal Sanders violated his and Z.B.'s Fourth, Fifth, and Fourteenth Amendment rights. Doc. 1, ¶¶ Compl.,18–19, 21–22. IISD argues that Bhombal inadequately pleaded governmental liability under § 1983, Doc. 10, IISD Mot. to Dismiss, 5, and Principal Sanders claims she is entitled to qualified immunity from Bhombal's §1983 claims, Doc. 11, Sanders Mot. to Dismiss, 5–7.

"To state a claim under § 1983, a plaintiff must (1) allege a violation of rights secured by the

Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Leffall v. Dall. Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir. 1994). Government-entity, or municipal, liability "for section 1983 violations results if a deprivation of constitutional rights was inflicted pursuant to official custom or policy." *Piotrowski v. City of Hou.*, 237 F.3d 567, 579 (5th Cir. 2001). The primary step in this analysis is whether the government entity violated the plaintiff's constitutional rights. *See Becerra v. Asher*, 105 F.3d 1042, 1048 (5th Cir. 1997) ("[W]ithout an underlying constitutional violation, there can be no § 1983 liability imposed on the school district."). A public servant is entitled to qualified immunity unless: (1) "'a constitutional right would have been violated on the facts alleged'" and (2) "'the right was clearly established' at the time of the violation." *Kitchen v. Dall. Cty.*, 759 F.3d 468, 476 (5th Cir. 2014) (quoting *Saucier v. Katz*, 533 U.S. 194, 200 (2001)). Courts have discretion in deciding which of the two prongs should be addressed first. *Id.*

Because a plaintiff must adequately plead a constitutional violation to establish government-entity liability and to overcome a qualified immunity defense, the Court will address first whether Bhombal has adequately pleaded that IISD and Principal Sanders violated his and Z.B.'s Fourth, Fifth, and Fourteenth Amendment rights. Because Bhombal's claims against Defendants stem from the same facts, the Court will jointly consider Bhombal's claims against each Defendant.[2]

---

[2] Defendants urge the Court to dismiss Bhombal's individual § 1983 and Title VI claims and all claims for intentional infliction of emotional distress because he has abandoned them in his response. Doc. 21, Reply, 1–2. Bhombal states in his response that he sues only on behalf of Z.B., Doc. 18, Resp., 17, but the court understands this statement to apply only to his Title VI claims. Thus, the Court will consider Bhombal's individual §1983 claims. And although Bhombal does not respond to Defendants' arguments about his tort claims, the Court declines to dismiss those claims simply for failure to respond. *See Mahmood v. Bank of Am. N.A.*, No. 3:11-CV-3054-M-BK, 2012 WL 527902, at*1 (N.D. Tex., Jan. 18, 2012) (addressing whether the plaintiff's complaint met the pleading standards despite the fact that the plaintiff failed to respond at all to the defendant's motion to dismiss).

1. Fourth Amendment Claims

Bhombal alleges that Defendants violated his Fourth Amendment rights because "he was subjected to an unreasonable arrest through issuance of the [c]riminal [t]respass" warning. Doc. 1, Compl., ¶ 19. He claims he was "detained without reasonable suspicion and/or probable cause," which restricted his right of access to IISD property. *Id*. Bhombal claims that Defendants violated Z.B.'s Fourth Amendment rights by unreasonably detaining him to question him about the "bomb" incident without Bhombal present. *Id*. ¶ 21. Finally, he claims Defendants failed to intervene to protect his and Z.B.'s Fourth Amendment rights. *Id*. 19. Defendants respond that the issuance of a criminal trespass warning is not an arrest within the meaning of the Fourth Amendment, nor is a school's choice to question one of its students without the student's parents present. Doc. 10, IISD Mot. to Dismiss, 8–10; Doc. 11, Sanders Mot. to Dismiss, 9–10. Finally, Defendants argue that Bhombal makes only conclusory allegations to support his failure-to-intervene claim. Doc. 10, IISD Mot. to Dismiss, 10–11; Doc. 11, Sanders Mot. to Dismiss, 11.

The Court agrees with Defendants. First, issuance of a criminal trespass warning does not constitute an arrest. *See Smith v. Machorro*, No. 3-07-cv-1547-BD, 2008 WL 656500, at *4 (N.D. Tex. Mar. 12, 2008) (finding that the plaintiffs were never placed under arrest and that the issuance of a criminal trespass warning did not violate the Fourth Amendment). Nor does Bhombal have a right to enter IISD property. *See Buckley v. Garland Indep. Sch. Dist.*, No. 3-04-CV-1321-P, 2005 WL 2041964, at *2 (N.D. Tex. Aug. 23, 2005) (finding that parents do not have a constitutional right

to enter school property).³ And Bhombal fails to allege any facts suggesting he was arrested or detained on another occasion. Although Bhombal alleges that "Defendant arrested Plaintiff without probable cause" because "no reasonably competent officer would have concluded that merely questioning why he was not being sold a phone would warrant assaulting Plaintiff," Doc. 1, Compl. ¶ 22, counsel seems to have mistakenly included these facts from a different case. Thus, Bhombal has failed to allege that Defendants violated his Fourth Amendment rights. Because the Court finds that allowing Bhombal to replead this claim would be futile, the Court **DISMISSES with prejudice** Bhombal's § 1983 claim for violation of his Fourth Amendment rights.

Bhombal's Fourth Amendment claims on behalf of Z.B. fail as well. Although students do not "shed their constitutional rights . . . at the schoolhouse gate," schools maintain "comprehensive authority" to "control conduct in the schools." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506–07 (1969). "Students at school thus have a significantly lesser expectation of privacy in regard to the temporary 'seizure' of their persons than does the general population." *Milligan v. City of Slidell*, 226 F.3d 652, 656 (5th Cir. 2000). Thus, courts have routinely held that students' Fourth Amendment rights are not violated when schools question students, even when their parents are absent. *See Blue v. Lexington Indep. Sch. Dist.,* 151 F. App'x 321, 323 (5th Cir. 2005) (finding no Fourth Amendment violation where student was summoned to the principal's office for questioning); *Stockton v. City of Freeport, Tex.,* No. 01-40588, 2002 WL 1219031, at *1 (5th Cir. May 20,

---

³ The plaintiff in *Buckley* argued that the issuance of a criminal trespass warning barring him from school grounds violated his due-process rights under the Fourteenth Amendment. *Id*. To the extent Bhombal also claims the criminal trespass warning violated his Fourteenth Amendment rights, the Court finds, for the same reason as the *Buckley* court, Bhombal failed to plead that issuance of the criminal trespass warning and restriction from IISD property violated his Fourteenth Amendment rights. Because the law is clear that a criminal trespass warning restricting a parent's right to access school property does violate the parent's Fourteenth Amendment rights, the Court **DISMISSES with prejudice** this claim.

2002) (finding detention of students for several hours did not violate Fourth Amendment); *Milligan*, 226 F.3d at 656 (finding the school did not violate the Fourth Amendment by requiring students to speak with police officers for ten to fifteen minutes); *Garcia v. Vega Indep. Sch. Dist.*, No. 2:16-cv-00211-J, 2017 WL 395126, at *3 (N.D. Tex. Jan. 27, 2017) (finding no constitutional violation where student was summoned to principal's office without a parent present).

Here, Bhombal alleges only that on March 27, 2017, Principal Sanders summoned Z.B. to discuss the "bomb" incident even though the incident had already been resolved and even though Bhombal had requested that the school refrain from questioning Z.B. without his parents present.[4] But because school officials may detain students for questioning without violating the Fourth Amendment, Bhombal fails to plausibly plead that IISD or Principal Sanders violated Z.B.'s constitutional rights. Because the Court finds that allowing Bhombal to replead this claim would be futile, the Court **DISMISSES it with prejudice**.

Finally, Bhombal fails to plead a failure-to-intervene claim. To plead a failure-to-intervene claim, a plaintiff must demonstrate that an official "(1) knows that a fellow [official] is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013). As explained above, Bhombal inadequately pleaded a violation of his or Z.B.'s Fourth Amendment rights. But even if he had plausibly pleaded a Fourth Amendment violation, he does not identify any person who knew of

---

[4] To the extent Bhombal claims IISD violated his Fourteenth Amendment rights by failing to notify him when the school questioned Z.B., this claim fails. Bhombal alleges that IISD violated Texas Family Code §52.02(b) by failing to notify him of Z.B.'s questioning but §52.02(b) applies only when a student is taken into police custody. *See* Tex. Fam. Code §52.02(b). As explained further below, Bhombal fails to allege that police were involved in any way with Z.B.'s questioning. And even if Defendants had violated §52.02(b), violation of a state statute does not give rise to a constitutional violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 119 (1992). Thus, this claim is **DISMISSED with prejudice**.

the alleged constitutional violation, had an opportunity to prevent that harm, and failed to act. His statement that "Defendants violated [the Fourth Amendment] by failing to intervene, where such intervention would have prevented the violations" is conclusory. Doc. 1, Compl. ¶ 18. Because the Court has found that it would be futile for Bhombal to replead his Fourth-Amendment-violation claims, the Court finds it would also be futile for him to replead his failure to intervene claims and therefore **DISMISSES** those claims **with prejudice**.

  2. Fifth Amendment Claims

Bhombal complains that Defendants violated Z.B.'s Fifth Amendment right against self incrimination "by subjecting [Z.B.] to repeated interrogations with no good faith basis." Doc. 1, Compl., ¶ 18. He clarifies that Defendants violated Z.B.'s rights by subjecting Z.B. to a custodial interrogation without *Mirandizing* him. Doc. 18, Resp., 10–11. Bhombal claims in his response to the motions to dismiss that "legal proceedings against Z.B. had begun" and urges the Court to find that the right against self incrimination attaches well before a criminal trial begins. *Id*. at 11–13. Defendants argue that a school's questioning of its students does not constitute a custodial interrogation requiring the reading of *Miranda* rights and that, even if it did, the right against self incrimination attaches only at trial. Doc. 10, IISD Mot. to Dismiss, 12–13; Doc. 11, Sanders Mot. to Dismiss, 12–13; Doc. 21, Reply, 5–6.

Again, the Court agrees with Defendants. The Fifth Amendment guarantees that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V. This right is implicated in custodial interrogations, which are defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

During a custodial interrogation, law-enforcement officials must protect the accused person's Fifth Amendment right by issuing *Miranda* warnings. *Id*. If law-enforcement officials fail to issue *Miranda* warnings, they may impair the accused's Fifth Amendment right, but "[t]he Fifth Amendment privilege against self incrimination is a fundamental trial right which can be violated only at trial." *Murray v. Earle*, 405 F.3d 278, 286, (5th Cir. 2005).

Bhombal's claim fails for two reasons. First, because Bhombal never alleges that Z.B. was questioned by law enforcement officials or even that law enforcement officials were present while Z.B. was questioned by school officials, Bhombal fails to adequately plead that Z.B. was subject to a custodial interrogation requiring the issuance of *Miranda* warnings. And even if he had been, "the remedy for a *Miranda* violation is the exclusion from evidence of any compelled self-incrimination, not a section 1983 action." *Mohamed v. Irving Indep. Sch. Dist.*, 252 F. Supp. 3d. 602, 620 (N.D. Tex. 2017). Nor does Bhombal allege anywhere in the complaint that Z.B. was the defendant in a criminal trial. Bhombal's statement that "legal proceedings against Z.B. had begun," is conclusory, and even if it were not, the Court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion. *Spivey*, 197 F.3d at 774. The complaint is devoid of allegations that any legal action was taken against Z.B. Thus, Bhombal's Fifth Amendment claim would fail regardless of whether the Court agreed—which it would not—to disregard Fifth Circuit precedent holding the right against self-incrimination attaches only at trial. Because the Court finds it would be futile for Bhombal to replead his Fifth Amendment claim, the Court **DISMISSES it with prejudice**.

    3.    <u>Fourteenth Amendment Claims</u>

Bhombal claims that Z.B.'s Fourteenth Amendment rights were violated because he was subjected to discipline unequal to that imposed on his peers because of his race and religion. Doc.

1, Compl., ¶ 18. Specifically, Bhombal points to the one-day in-school suspension Z.B. received after the "bomb" incident and the fact that Z.B. was assigned to a different elementary school after the May 2017 altercation with several other fourth graders.[5] *Id.* ¶¶ 11, 14. Defendants responds that Bhombal fails to allege Z.B. was treated differently from other students who engaged in similar misconduct. Doc. 10, IISD Mot. to Dismiss, 15; Doc. 11, Sanders Mot. to Dismiss, 16–18.

"[T]o state a claim of racial [and religious] discrimination under the Equal Protection Clause and section 1983, the plaintiff must allege and prove that (1) he or she received treatment different from that received by similarly situated individuals and that (2) the unequal treatment stemmed from a discriminatory intent." *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 412 (5th Cir. 2015) (internal quotation marks and alterations omitted). "Discriminatory [intent] implies that the decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group." *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001) (internal alterations omitted). A plaintiff does not need to establish a prima facie case of discrimination at the pleading stage. *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013). But a plaintiff must plead "sufficient facts on all of the ultimate elements of a disparate treatment claim to make his case plausible." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016).

Here, Bhombal fails to allege that Z.B. was treated differently from any other similarly

---

[5] Bhombal lists ten additional instances that occurred at some point while Z.B. attended John Haley Elementary in which he alleges Z.B. received discriminatory discipline. Doc. 1, Compl., ¶ 9. But Bhombal does not claim that Z.B. received treatment that was different from other similarly situated students; he claims only that the alleged punishment was disproportionate or that Z.B. was denied privileges. *Id.* Thus, the Court finds that Bhombal fails to plausibly plead that any of these instances violated Z.B.'s Fourteenth Amendment rights.

situated student. Bhombal does not point to another incident in which a student claimed to have a bomb in his or her lunch box but was treated differently than Z.B., nor does he allege that any student besides Z.B. has ever claimed to have a bomb in his or her lunch box. Bhombal's statement that "[t]he 'bomb' incident, including the disproportionate punishment received by [Z.B.] for no wrongdoing . . . is the natural culmination of the disparate treatment [Z.B.] and his family have received at the hands of IISD due to their religious beliefs" is conclusory. Doc. 1, Compl. ¶ 11. Bhombal also fails to allege Z.B.'s transfer to a different elementary school was discriminatory punishment for the May 2017 altercation. Even taking as true the allegation that Z.B.'s transfer was related to the altercation, Bhombal fails to allege that any other student's actions during the altercation were similar to Z.B.'s, nor does he plead the race or religion of the other students involved. Bhombal states only that "Z.B. was subsequently and unilaterally transferred against his will . . . [and] [n]o other students involved in the altercation were suspended or transferred." *Id*. ¶ 14. Thus, Bhombal has not pleaded "sufficient facts on all of the ultimate elements of a disparate treatment claim to make his case plausible." *Chhim*, 836 F.3d at 470. Thus, the Court **DISMISSES without prejudice** Bhombal's Fourteenth Amendment claims brought on behalf of Z.B.

Because the initial step in determining § 1983 liability for government entities and individuals is whether the defendant violated a constitutional right, *Becerra*, 105 F.3d. at 1048; *Kitchen*, 759 F.3d at 476, and because the Court has determined that Bhombal failed to plead that Defendants violated any of his or Z.B.'s constitutional rights, the Court could ends its analysis here. In regards to Principal Sanders' qualified-immunity defense, the Court does conclude its analysis; because Bhombal failed to plead violation of a constitutional right, the Court cannot address whether that right was clearly established. *Kitchen*, 759, F.3d at 476. But even without a plausible constitutional violation, the

Court can address the second factor in determining a government entity's § 1983 liability: whether there was an official policy or custom that caused the alleged violation. *Piotrowski*, 237 F.3d at 579. Because Bhombal may replead his Fourteenth Amendment claims, the Court chooses to address that factor now.

### 4. Official Custom or Policy

Bhombal alleges that "IISD has commissioned reports and studies that indicate a clear bias exists in the curriculum against . . . 'radical Muslim' ideology [but] [d]espite being aware of such bias and the discriminatory practices employed in the unequal discipline of students . . . IISD has persisted" in its discrimination. Doc. 1, Compl., ¶ 25. Bhombal does not expound on the facts supporting his allegation but instead pleads that IISD's pattern of discrimination is described in another § 1983 case against IISD, *Mohamad v. Irving Independent School District.* In response to Bhombal's allegations, IISD argues that Bhombal conflates a pattern with the official policy or custom a plaintiff is required to identify. Doc. 10, IISD Mot. to Dismiss, 18. IISD claims that Bhombal has failed to identify any specific policy or custom of discrimination based on race or religion that was adopted by the IISD Board of Trustees and that lead to the alleged violations of his and Z.B.'s constitutional rights. *Id.* at 18–19.

The Court agrees with IISD. "Official policy usually exists in the form of written policy statements, ordinances, or regulations, but it may also arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *Davenport v. City of Garland*, 3:09–CV–798–B, 2010 WL 1779620, at *2 (N.D. Tex. April 9, 2010) (quoting *Webster v. City of Hou.*, 735 F.2d 838, 841 (5th Cir. 1984)). "[A] policy or custom is official only 'when it results from the decision or acquiescence of the municipal officer or body with

'final policymaking authority' over the subject matter of the offending policy." *Id.* (quoting *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)). In addition, there must be a direct causal link between the policy or custom and the constitutional violation. *See Piotrowski*, 237 F.3d at 580. Thus, to state a claim for municipal liability a plaintiff must plead facts from which the court could reasonably infer: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Valle v. City of Hou.*, 613 F.3d 536, 541–42 (5th Cir. 2010)(internal quotation marks omitted).

Here, Bhombal's references to the *Mohamed* case are insufficient to adequately plead that IISD had an official policy or custom of discrimination based on race and religion that caused his and Z.B.'s alleged constitutional violations. In *Mohamed*,[6] the parent of an African American, Muslim student brought a §1983 action against IISD and the student's high-school principal for issuing the student a three-day suspension after he allegedly brought a bomb to school. *Mohamed*, 252 F.Supp. 3d. at 609. The plaintiff also claimed the City of Irving violated the student's Fourth and Fifth Amendment rights for arresting and interrogating the student in connection with the alleged bomb. *Id.* To demonstrate that IISD acted pursuant to an official custom or policy, the plaintiff (1) alleged that "the United States Department of Justice has opened an investigation into the conduct of IISD . . . regarding its pattern of discrimination," (2) relied on data from the Texas Education Agency (TEA) that allegedly demonstrates "racial disparities in student discipline in the IISD between 2007

---

[6] The Court may consider information that is not part of the pleadings if it is referenced in the plaintiff's complaint and attached to the motion to dismiss briefing. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).

and 2015," and (3) claimed that the City of Irving's implementation of the Criminal Alien Program (CAP) resulted in "Irving police officers engag[ing] in a pattern of unconstitutional arrests." *Mohamed*, 252 F. Supp. 3d at 611–12.

The *Mohamed* court found these allegations insufficient to adequately plead that IISD had an official custom or policy that caused the alleged constitutional violations:

> Plaintiff does not allege that the IISD's Board of Trustees maintained an unconstitutional policy of discriminatory discipline based on race or religion. The sole allegation in the Complaint is that a "pattern of discrimination" in the IISD, as shown by student discipline statistics allegedly compiled by the TEA, "led directly" to the "over-discipline of A.M. for showing off his home-made clock-in-a-pencil-box to his teachers." The law is clear that "the description of a policy or custom and its relationship to the underlying constitutional violation cannot be conclusory; it must contain specific facts." In *Spiller*, the Fifth Circuit found the allegation that several policies "led to" unspecified "unconstitutional arrests and confinements," and that a departmental policy of "engag[ing] in conduct toward African American citizens without regard to probable cause to arrest" were too vague and conclusory to support alleged municipal liability under *Monell*. Plaintiff's allegations fail for the same reason. Further, allegations regarding findings of disparate discipline [of African Americans] in TEA reports and an alleged anti-Muslim bias in the community are not "facts that establish that the challenged policy was promulgated or ratified by the school district's policymaker," in this case the Board of Trustees.

*Mohamed*, 252 F. Supp. 3d at 617 (internal citations and alterations omitted). The same is true here. And Bhombal's allegations fail for the additional reason that, unlike the minor in *Mohamed*, Z.B. is not African American nor was he arrested or interrogated by the Irving police; thus, even if the TEA report and Irving's participation in the CAP program were sufficient to plead evidence of a discriminatory policy or custom, they would be inapplicable here. Therefore, Bhombal has failed to adequately plead that IISD violated his or Z.B.'s constitutional rights or that the alleged violations were "inflicted pursuant to official custom or policy." *Piotrowski*, 237 F.3d at 579.

B.  *Title VI*

Bhombal claims that IISD and Principal Sanders violated Title VI of the Civil Rights Act of 1964 by depriving him and Z.B. of their Fourth and Fourteenth Amendment rights. Doc. 1, Compl., ¶ 24. Bhombal's only specific allegation of a Title VI violation is that Principal Sanders "violated [Z.B.]'s established constitutional right to be free from discriminatory discipline" because Z.B. "was detained on more than one occasion to discuss the 'bomb' incident without the presence of an adult parent as had been requested" and because at least one of these detentions occurred after Z.B. had served his in-school suspension. *Id.* ¶ 26. IISD and Principal Sanders respond that Title VI prohibits Bhombal from asserting a Title VI claim individually, against Principal Sanders, or on the basis of religious discrimination. Doc. 10, IISD Mot. to Dismiss, 20–23; Doc. 11, Sanders Mot. to Dismiss, 21. They also claim that Bhombal fails to assert a Title VI claim on Z.B.'s behalf against IISD for race-based discrimination because the complaint lacks any allegations of intentional discrimination. *Id.*

In his response, Bhombal agrees that he does not have standing to individually bring a Title VI claim. Doc. 18, Resp., 17. Thus, to the extent Bhombal alleged Title VI claims based on violations of his Fourth and Fourteenth Amendment rights, those claims are **DISMISSED with prejudice**. Bhombal does not respond to IISD and Principal Sanders's claims that there is no individual liability under Title VI and that claims of religious discrimination are not actionable under Title VI, but Defendants are correct. *Mohamed*, 252 F. Supp. 3d at 627 ("Title VI does not proscribe discrimination based on religion."); *Muthukumar v. Kiel*, 478 F. App'x. 156, at*2 (5th Cir. May 30, 2012) ("Title VI permits suits only against public or private entities receiving funds and not against individuals."). Thus, to the extent Bhombal's Title VI claims are based on religious discrimination

or are brought against Principal Sanders, those claims are **DISMISSED with prejudice**. Therefore, Bhombal's only viable Title VI claim is that IISD violated Z.B.'s Fourth and Fourteenth Amendment rights.

But this claim also fails. Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Title VI does not protect individuals from unfair decisions but only decisions that are made with discriminatory intent. *Mohamed,* 252 F. Supp. 3d at 627. Accordingly, in order to adequately plead a Title VI claim, a plaintiff must include allegations of acts of intentional discrimination committed by a defendant. *Id.* And in Title VI cases that do not involve an official policy of intentional discrimination, a plaintiff must allege that "an appropriate person—an official authorized to institute corrective measures—had actual knowledge of the discrimination and responded with deliberate indifference." *Id.* (internal quotations omitted).

Here, Bhombal alleges only that Principal Sanders discriminated against Z.B. by detaining him to discuss the "bomb" incident. The Court has already determined that Bhombal failed to plead that Principal Sanders discriminated against Z.B. in violation of the Fourteenth Amendment when the school questioned him about the "bomb" incident. Bhombal's conclusory allegation with regards to his Title VI claim is no different. And even if Principal Sanders did intentionally discriminate against Z.B. by questioning him, "an entity such as IISD cannot be held vicariously liable under Title VI." *Mohamed*, 252 F. Supp. 3d at 628. Further, though Bhombal claims Principal Sanders was aware of discrimination Z.B. "had suffered at the hands of other students," Doc. 1, Compl., ¶ 26, this conclusory allegation does not identify an official at John Haley Elementary who had knowledge of

race-based discrimination against Z.B. but failed to address the problem, nor does Bhombal's claim that IISD was aware of a "pattern of discrimination" and had "commissioned reports and studies" indicating bias in the curriculum against "radical Muslim ideology," *Id.* ¶ 25. Thus, Bhombal fails to state a Title VI claim against IISD for intentional discrimination based on race. This claim is **DISMISSED without prejudice**.

C.  *Intentional Infliction of Emotional Distress*

Bhombal alleges that "Defendants acted intentionally and/or recklessly when unnecessarily interrogating [Z.B.] and subjecting Bhombal to a [c]riminal [t]resspass citation" and that Defendants' conduct was "extreme and outrageous." Doc. 1, Compl., ¶ 28. IISD responds that it is entitled to sovereign immunity from Bhombal's tort claim and it moves to dismiss Bhombal's tort claim against Principal Sanders. Doc. 10, IISD Mot. To Dismiss, 24–25; Tex. Civ. Prac. & Rem. Code § 101.106(e) ("If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediatley be dismissed on the filing of a motion by the governmental unit."). Bhombal agrees that IISD may dismiss his tort claim against Principal Sanders, Doc. 18, Resp., 17; thus, Bhombal's claim against Principal Sanders for intentional infliction of emotional distress is **DISMISSED with prejudice**.

Bhombal does not respond to IISD's invocation of sovereign immunity, but the Court agrees that IISD is immune. "The law is well settled in this state that an independent school district is an agency of the state and, while exercising governmental functions, is not answerable for its negligence in a suit sounding in tort." *Barr v. Bernhard*, 562 S.W.2d 844, 846 (Tex. 1978). "Although the Texas Tort Claims Act waives sovereign immunity under certain circumstances, the waiver of immunity for school districts is limited to claims arising from accidents involving the use of motor-driven

vehicles." *Hill v. Fort Bend Indep. Sch. Dist.*, 275 F.3d 42 (5th Cir. 2001. Thus, IISD is entitled to sovereign immunity and Bhombal's claim for intentional infliction of emotional distress against IISD is **DISMISSED with prejudice**.

IV.

CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motions to dismiss. Doc. 10; Doc. 11. The Court **DISMISSES with prejudice** Bhombal's § 1983 claims for violations of the Fourth and Fifth Amendments; Bhombal's § 1983 claims for violations of his Fourteenth Amendment rights; Bhombal's Title VI claims brought individually, against Principal Sanders, and sounding in religious discrimination; and Bhombals's claims for intentional infliction of emotional distress against IISD and Principal Sanders. The Court **DISMISSES without prejudice** Bhombal's § 1983 claims for violations of the Fourteenth Amendment and Bhombal's Title VI claim on Z.B.'s behalf against IISD for race-based discrimination. If Bhombal wishes to replead these claims, he must file an amended complaint no later than **June 8, 2018.** In his amended complaint Bhombal must address the qualified immunity arguments in Principal Sanders' motion to dismiss and explain why the three factors needed to overcome her defense are met here.

SO ORDERED.

SIGNED: May 9, 2018.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE