UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| Z.B. b/n/f IQBAL BHOMBAL and MARIE BHOMBAL, | § § § § § § § § § § § § | |
| Plaintiffs, | | |
| v. | | CIVIL ACTION NO. 3:17-CV-2583-B |
| IRVING INDEPENDENT SCHOOL DISTRICT, | | |
| Defendant. | | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Irving Independent School District's (IISD) Motion to Dismiss Plaintiffs' Third Amended Complaint. Doc. 49. For the reasons stated below, the Court **GRANTS** IISD's Motion (Doc. 49) and **DISMISSES with prejudice** all of Plaintiffs' claims against IISD.

## I.

## BACKGROUND[1]

*A.    Factual Background*

This case involves a discrimination suit brought by parents on behalf of their Muslim-Indian-American son and the school district in which he used to attend. Plaintiffs Iqbal and Marie Bhombal now bring their Third Amended Complaint on behalf of their minor child, Z.B. (collectively the "Bhombals"), against IISD under 42 U.S.C. § 1983 for violations of the Fourteenth Amendment and Title VI for race-based discrimination and retaliation. Doc. 48, Third Am. Compl. (TAC), ¶ 1; *see*

---

[1]The Court draws its factual history from the parties' pleadings. Any contested fact is identified as the contention of a particular party.

*also* Doc. 60, Pls.' Resp., 1.

Z.B. and his family are Muslim. Doc. 48, TAC, ¶ 12. Z.B.'s father was born in India; his mother is Caucasian and was born in the United States. *Id.* In essence, the Bhombals' claims are based on alleged bullying, harassment, and retaliation that Z.B. and his father experienced at school because they are Muslim and Indian. *Id.* ¶ 13. More specifically, the Bhombals allege that from 2012–2016 (Kindergarten to Second Grade) school officials questioned the Bhombals on Z.B.'s religious dietary restrictions, repeatedly called Z.B.'s father to the school for small infractions, prohibited Z.B. from using the restroom on one occasion, made discriminatory remarks relating to the 9/11 terrorism attacks, intimated that Z.B.'s father sexually and/or physically assaulted Z.B., and reported Z.B.'s father to Child Protective Services. *See id.* ¶¶ 31–50. The Bhombals allege that "Z.B. had a comparatively smooth [third-grade] year." *Id.* ¶ 51.

Then in March 2017, during Z.B.'s fourth-grade year, several students reported to school officials that Z.B. had a bomb in his lunch box and called him "Tally," shorthand for the Taliban.[2] *Id.* ¶¶ 53–54. School officials scheduled a meeting to discuss the incident with Z.B. and his father resulting in Z.B. receiving a one-day suspension. *Id.* ¶¶ 54–56. At the meeting, Z.B.'s father allegedly told school officials that Z.B. was being harassed due to his religion, race, and ethnic background. *Id.* ¶ 55. After this initial meeting, Z.B.'s father told schools officials that they should refrain from questioning Z.B. unless one of his parents were present. *Id.* ¶ 56. However, the Bhombals allege that

---

[2] IISD notes that the other students' reports that Z.B. had a bomb in his lunch box were based on Z.B. telling the students that he had a bomb. Doc. 49, IISD's Mot. to Dismiss, 3–4. In the Bhombals' Second Amended Complaint they allege that Z.B. had "grow[n] tired of the teasing" he had encountered at school and told other students that he had a bomb in his lunch box. Doc. 39, Second Am. Compl., ¶ 104. However, this allegation is not contained in the Third Amended Complaint.

school officials continued to question Z.B. about the incident without his parents present. *Id.* ¶ 57. Z.B.'s father then had another meeting with school officials where he became "very upset" and "vehemently complain[ed]" about his son being questioned without him or his wife present. *Id.* ¶ 58. Later that afternoon, school security arrived at the Bhombals' home and issued the father a trespass warning that prevented him from going to the school. *Id.* ¶¶ 58–60. In May 2017, Z.B. was involved in two physical altercations with other students. *Id.* ¶¶ 63–66. And finally, during Z.B.'s fifth-grade year, his parents removed Z.B. from IISD schools. *Id.* ¶ 69.

B.  *Procedural Background*

After Bhombal originally filed suit against IISD and former-defendant and principal Lindsay Sanders in September 2017, both Defendants filed separate Motions to Dismiss under Federal Rule of Civil Procedure 12(b)(6). *See* Docs. 10, 11. The Court issued a Memorandum Opinion and Order granting both motions in full, dismissing some claims with prejudice, but granting the Bhombals a month to file an amended complaint repleading their (1) Section 1983 claim for violations of the Fourteenth Amendment and (2) a Title VI claim on Z.B.'s behalf against IISD for race-based discrimination. Doc. 22, Mem. Op. & Order, 18. The Court then granted the Bhombals several extensions of time, totaling roughly six months, in which to retain new counsel and file their now-operative Third Amended Complaint. This Complaint contains the two claims; however, Plaintiffs no longer bring suit against Sanders. *See* Doc. 48, TAC.

IISD then filed its current Motion to Dismiss arguing that the Bhombals' Third Amended Complaint (1) fails to cure the pleading deficiencies the Court noted in its previous Order, (2) is replete with conclusory allegations based on beliefs and intimations as opposed to well-pleaded facts of intentional discrimination or retaliation, and (3) otherwise fails to state a Section 1983 claim

because the Bhombals fail to allege that a policy or custom of IISD's Board of Trustees caused the alleged depravation of Z.B.'s constitutional rights. Doc. 49, IISD's Mot. to Dismiss, 1. The Bhombals filed their Response (Doc. 60) and IISD its Reply (Doc. 63). Thus, IISD's Motion is ripe for review and the Court now turns to determining the sufficiency of the Bhombals' claims.

## II.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). "The court's review [under 12(b)(6)] is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Ironshore Europe DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 763 (5th Cir. 2019) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citation omitted)).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When well-pleaded facts fail to achieve this plausibility standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (cleaned up).

## III.

## ANALYSIS

IISD moves to dismiss all of the Bhombals' claims under Rule 12(b)(6). Liberally construing the Bhombals' Third Amended Complaint, the Bhombals appear to bring two categories of claims: one under Title VI arguing that IISD engaged in race/national-origin-based discrimination and retaliation in addition to turning a blind eye to student-on-student harassment; and another under Section 1983 arguing that IISD violated the Fourteenth Amendment. In analyzing the sufficiency of each of the Bhombals' remaining claims, the Court will discuss the pleading deficiencies and applicable law the Court noted in its previous Memorandum Opinion and Order before discussing whether the Bhombals' Third Amended Complaint cures those deficiencies and otherwise sufficiently states a claim to survive a motion to dismiss.

A. *Title VI*

The Court previously dismissed with prejudice the Title VI claims brought by Z.B.'s father individually and the claims brought on behalf of Z.B. based on religious discrimination because those claims failed as a matter of law. Doc. 22, Mem. Op. & Order, 15–16 (citing *Mohamed v. Irving Indep. Sch. Dist.*, 252 F. Supp. 3d 602, 627 (N.D. Tex. 2017) (hereinafter "*Mohamed I*") ("Title VI does not proscribe discrimination based on religion.")). However, the Court dismissed without prejudice the Title VI race-discrimination claim brought on Z.B.'s behalf finding that the Bhombals failed to adequately allege that IISD engaged in intentional discrimination based on race. *Id.* at 16–17.

Now, the Bhombals allege that IISD violated Title VI when it was aware that Z.B. was being bullied, harassed, and physically assaulted based on his race and nationality, yet failed to keep him safe from harm. Doc. 48, TAC, ¶ 104. These alleged Title VI violations come in the form of IISD's failure to investigate or remedy such concerns, as well as countless other failures noted in the Complaint. *Id.* ¶¶ 105–06; *see also id.* ¶¶ 70–93 (alleging, *inter alia*, that IISD failed to provide Z.B. with counseling, social skills training, or an aide or shadow to observe him at school). And lastly, the Bhombals allege that IISD school officials retaliated against Z.B. because of his parents' advocacy on Z.B.'s behalf.[3] *Id.* ¶¶ 93, 107. IISD argues that the Bhombals' Complaint fails to state a plausible Title VI claim because the Complaint contains no facts showing intentional race or national origin discrimination or retaliation. Doc. 49, IISD's Mot. to Dismiss, 5.

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Title VI does not protect individuals from unfair decisions, but only decisions that are made with discriminatory intent. *Mohamed I,* 252 F. Supp. 3d at 627. In other words, in order to adequately plead a Title VI claim, a plaintiff must include allegations of acts of intentional discrimination committed by a defendant. *Id*. And in Title VI cases, such as this one,[4] where the plaintiff does not

---

[3] The Complaint also appears to allege that Z.B.'s father himself was a victim of retaliation. *See* Doc. 48, TAC, ¶ 13. However, the Complaint no longer asserts any claims on behalf of Z.B.'s father, individually, and the Court previously dismissed with prejudice his individual Title VI claims. *See* Doc. 22, Mem. Op. & Order, 15.

[4] As discussed in more detail below, in the Bhombals' Response they argue that IISD had unconstitutional policies, procedures, customs, and practices; however, besides for conclusory allegations, no where in the Complaint or the Response do they point to an actual policy they challenge as unconstitutional or otherwise discriminatory. *See* Doc. 60, Pls.' Resp., 28–30.

allege any official policy of intentional discrimination, to receive damages, a plaintiff must allege that "'an appropriate person'—an official authorized to institute corrective measures—had 'actual knowledge' of the discrimination and responded with 'deliberate indifference.'" *Id.* (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)). In *Gebser* the Supreme Court "held that a Texas school district could not be held liable for damages based on a teacher's sexual molestation of a child because no one in authority knew of the molestation, and expressly rejected Title VI liability based on negligence, constructive notice, and respondeat superior." *Id.* (citing *Gebser*, 524 U.S. at 285–88).[5]

Ultimately, the Court finds that the Bhombals have failed to allege facts showing intentional discrimination on the basis of *race* or *national origin*, or that IISD or its school officials otherwise retaliated[6] against Z.B. based on a protected activity. The Bhombals' Third Amended Complaint still relies on repeated conclusory allegations that Z.B. was discriminated based on his Muslim religion, which the Court previously held could not sustain a Title VI claim. *See, e.g.*, Doc. 48, TAC, ¶¶ 12, 32 (allegations that IISD officials questioned Z.B.'s father on why he brought him lunch everyday, which was because of the family's *religious* dietary restrictions), 38 ("there were intimations relating

---

[5] Although *Gebser* addressed Title IX rather than Title VI, courts have interpreted the two statutes as operating in the same manner. *See Mohamed I*, 252 F. Supp. 3d at 627 n.14. Thus, "case law interpreting Title IX is equally applicable to cases involving Title VI." *Id.*

[6] "To establish a prima facie case of unlawful retaliation [under Title VI], plaintiff must show (1) that she engaged in protected activity, (2) that she suffered a material adverse action, and (3) that a causal link exists between the protected activity and the adverse action." *Bisong v. Univ. of Houston*, 493 F. Supp. 2d 896, 911 (S.D. Tex. 2007) (citing *Peters v. Jenney*, 327 F.3d 307, 320 (4th Cir. 2003)). The Court addresses the Bhombals' Title VI discrimination and retaliation claims together because they are based on the same allegations and because as explained below the Court finds that the claims fail for similar reasons—the allegations do not rise above the level of mere speculation nor do they show a causal connection between IISD's alleged actions (whether discriminatory or retaliatory) and Z.B.'s race/national origin.

to Z.B.'s Muslim nationality and terrorism"); *see also* Doc. 60, Pls.' Resp., ¶ 51 (arguing that IISD officials questioning Z.B.'s mother about her religion supports their Title VI claim). Therefore, the Court does not consider these allegations to support the Bhombals' Title VI claims. *See Mohamed I*, 252 F. Supp. 3d at 627.

Furthermore, the statements that purport to allege that Z.B. was discriminated or retaliated against by IISD school officials on the basis of race/national origin do not rise above the level of mere speculation, nor do they establish a connection between IISD's actions and Z.B.'s race or national origin. For example, the Complaint alleges that throughout Z.B.'s years at IISD schools, Z.B's father was called to the school for several "small infractions," which lead them to believe they were unwelcome at IISD and were victims of discrimination based upon race, religion, or nationality. Doc. 48, TAC, ¶¶ 33, 40. The Complaint also alleges that discrimination and retaliation based on race is shown by the fact that Z.B. was not allowed to go on several field trips without his father present. *Id.* ¶¶ 39, 48. And finally, the Complaint alleges that the March 2017 lunch-box-bomb incident and resulting questioning by school officials was based on race and national origin discrimination. *Id.* ¶¶ 53–57. However, despite these allegations, the Complaint lacks sufficient facts that supports the Bhombals' subjective belief or that otherwise connects these alleged discriminatory and retaliatory acts with Z.B's race or national origin. In other words, there are no allegations that show that the calls regarding small infractions or need for parent supervision at field trips were baseless or unnecessary; that the school treated Z.B. differently from non-Indian students who engaged in small infractions or required field-trip supervision; or that school officials failed to question a non-Indian student that claimed to have a bomb on campus. *See Subbiah v. Univ. of Tex. at Dallas*, 2011 WL 1771806, *5–6 (N.D. Tex. May 10, 2011) (Boyle, J.) (holding that the allegations supporting the

plaintiff's Title VI claim failed to show that the alleged discriminatory acts were made with a discriminatory motive and that the "mere fact that Plaintiff might believe these acts were taken for discriminatory or retaliatory reasons is not enough"), *aff'd sub nom.*, *Muthukumar v. Univ. of Tex. at Dallas*, 471 F. App'x 407 (5th Cir. 2012), *cert. denied*, 568 U.S. 1251 (2013).

Alternatively, even if the Court were to find that these alleged actions taken by IISD teachers and other school officials are sufficient to sustain a discrimination or retaliation claim—which they are not—IISD cannot be liable under Title VI unless an "an appropriate person" had (1) 'actual knowledge" of the discrimination and (2) responded with "deliberate indifference." *See Gebser*, 524 U.S. at 290. This is a necessary showing not only for the Bhombals' Title VI race discrimination claim, but also to the extent the Bhombals' bring a claim against IISD under Title VI for student-on-student harassment.[7]

First, the Court finds that the Complaint fails to sufficiently allege that an appropriate person—*e.g.*, the IISD Board, superintendent, or principal—had actual knowledge that Z.B. was being intentionally discriminated or retaliated against on the basis of his race or national origin. Instead, many of the allegations the Bhombals rely on to impute knowledge on the part of IISD were

---

[7] In addition to alleging that IISD school officials engaged in race-based discrimination and retaliation, the Court interprets the Bhombals' Complaint to also allege a student-on-student Title VI harassment claim. *See* Doc. 48, TAC, ¶ 104 (alleging that IISD knew other students were bullying and harassing Z.B. at school based on his race and nationality but failed to keep him safe from harm). Under Title VI, a school district may be liable for student-on-student harassment if "(1) the harassment was 'so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to educational opportunities or benefits provided by the school' . . . and the district (2) had actual knowledge, (3) had 'control over the harasser and the environment in which the harassment occurs,' and (4) was deliberately indifferent." *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 408 (5th Cir. 2015) (quoting *Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 644, 650 (1999)). In the Bhombals' case, in addition to failing to show that IISD had actual knowledge of the unlawful discrimination and responded with deliberate indifference, the Court does not find that the allegations of student-on-student harassment were "sufficiently continuous and concerted" to deprive Z.B. access to educational opportunities. *See id.* at 409.

general complaints by a concerned parent to school officials regarding issues unrelated to race or national origin discrimination. *See*, *e.g.*, Doc. 48, TAC, ¶¶ 37–39 (alleging complaints to a school principal about Z.B.'s teacher asking him questions or otherwise engaging in conduct that intimated that Z.B's father sexually molested his son or that inferred religious discrimination), 43–44 (complaints unrelated to race or national origin discrimination), 52 (complaints regarding a teacher allegedly assaulting Z.B. and calling him "dumb" and "stupid"). However, to state a plausible Title VI claim, IISD must have had actual knowledge of harassment or unlawful discrimination that is explicitly based on the victim's "race, color, or national origin." *See Fennell*, 804 F.3d at 409 n.23.

The Complaint also alleges that Z.B.'s father "wrote to the whole school board and Superintendent about the discrimination his son and family were experiencing, but there was no reply by the Board." Doc. 48, TAC, ¶ 47. However, a review of the letter, which was attached to IISD's Motion to Dismiss, shows that the email did not complain of race or national origin discrimination, but instead contained a litany of specific complaints Z.B.'s father had about the school his son was attending—*e.g.*, complaining about the teachers, other students behavior, and his son being bullied and being accused of bullying.[8] *See* Doc. 50, IISD's App., 1–8 ("I am writing this letter to make you aware of the hostile teaching or let's say Non-teaching environment at John Haley elementary school and sustained harrassment [sic] of my son."). Moreover, the lack of allegations

---

[8] IISD argues that because the Complaint refers to this letter and IISD's knowledge of discrimination or lack thereof is central to the Bhombals' Title VI claim the letter may be considered at the motion-to-dismiss stage. Doc. 49, IISD's Mot. to Dismiss, 3 n.4. The Bhombals however dispute whether the Court may consider this letter without converting this Motion to a motion for summary judgment because the Complaint only refers to oral statements and not documents. Doc. 60, Pls.' Resp., ¶ 46. The Court agrees with IISD and finds that considering this letter in light of the allegations raised in the Bhombals' Complaint is proper because the letter was attached to IISD's Motion, is referred to in the Complaint when the Bhombals allege the Z.B.'s father "wrote to the whole school board," and is central to the Title VI claim and whether IISD had knowledge. *See Ironshore Europe DAC*, 912 F.3d at 763; *see also* Doc. 48, TAC, ¶ 47.

that an appropriate IISD official had actual knowledge that Z.B. was being unlawfully discriminated against is not only fatal to the Bhombals' Title VI discrimination and student-on-student harassment claim but is equally fatal to their retaliation claim because it fails to show that Z.B.'s father engaged in a protected activity. *See Green v. Monroe City Sch. Bd.*, 2005 WL 2739136, at *4 (W.D. La. Oct. 24, 2005) (defining protected activity as an individual opposing an unlawful discriminatory practice as defined by Title VI—*e.g.*, race, color, or national origin discrimination—which he or she reasonably believed was occurring).

Second, even if the Court were to impute knowledge on IISD based on Z.B.'s father's non-race/national origin complaints or other allegations, the Complaint also fails to sufficiently allege that IISD was deliberately indifferent to such complaints or to the harassment posed by other students. The Bhombals argue, *inter alia*, that deliberate indifference is shown by IISD's failure to follow various Title VI regulations; failure to follow IISD procedures; and failure to provide Z.B. with accommodations such as counseling, social skills training, or an aide or shadow to observe him at school. Doc. 60, Pls.' Resp., 23–24. However, "a deviation from an entity's internal procedure, without more, does not show discriminatory intent or itself amount to a constitutional violation, as constitutional requirements nevertheless may have been met." *Mohamed for A.M. v. Irving Indep. Sch. Dist.*, 300 F. Supp. 3d 857, 896 (N.D. Tex. 2018) (hereinafter "*Mohamed II*") (citing *Davis v. Scherer*, 468 U.S. 183, 194 (1984)). Moreover, Title VI creates only a private right of action for intentional discrimination; failure to follow regulations promulgated under Title VI by itself is not actionable. *Alexander v. Sandoval*, 532 U.S. 275, 293 (2001).

In sum, for the reasons stated above and those set forth in the Court's prior Memorandum Opinion and Order (Doc. 22), the Court concludes that the Bhombals have failed to cure the

pleading deficiencies previously noted and have otherwise failed to state a plausible Title VI race/national origin discrimination or retaliation claim, or that IISD is liable for student-on-student harassment. Therefore, the Court **GRANTS** IISD's Motion to Dismiss on these Title VI claims.

B.      *Section 1983*

The Bhombals' Third Amended Complaint asserts violations of Z.B.'s Title VI and Fourteenth Amendment rights under Section 1983. Doc. 48, TAC, ¶¶ 1, 96–101. First, the Court notes that to the extent the Bhombals bring the same Title VI claims under Section 1983 as the ones discussed above, they fail for the same reasons. *See Subbiah v. Kiel*, 850 F. Supp. 2d 653, 659 (N.D. Tex. 2011) (Boyle, J.), *aff'd sub nom.*, *Muthukumar v. Kiel*, 478 F. App'x 156 (5th Cir.), *mandamus denied*, 568 U.S. 940 (2012). Thus, the Court focuses its Section 1983 analysis on whether the Bhombals have sufficiently plead a Fourteenth Amendment violation in order to invoke Section 1983 liability. IISD argues that the Bhombals' Section 1983 claim fails for two reasons: (1) they have failed to adequately plead a constitutional violation; and (2) they have failed to establish governmental entity liability. Doc. 49, IISD'S Mot. to Dismiss, 19–23.

The Court previously dismissed without prejudice the Bhombals' Fourteenth Amendment claim brought on Z.B.'s behalf because they failed to allege that Z.B. was treated differently from any other similarly situated student or that any constitutional violation was inflicted pursuant to an official custom or policy. Doc. 22, Order, 9–14. Ultimately, the Court finds that the Bhombals' Third Amended Complaint suffers from the same deficiencies as outlined in its prior Order.

"To state a claim under § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Leffall v. Dall. Indep. Sch. Dist.*, 28 F.3d 521,

525 (5th Cir. 1994). Government-entity, or municipal, liability "for section 1983 violations results if a deprivation of constitutional rights was inflicted pursuant to official custom or policy." *Piotrowski v. City of Hou.*, 237 F.3d 567, 579 (5th Cir. 2001). The primary step in this analysis is whether the government entity violated the plaintiff's constitutional rights. *See Becerra v. Asher*, 105 F.3d 1042, 1048 (5th Cir. 1997) ("[W]ithout an underlying constitutional violation, there can be no § 1983 liability imposed on the school district.").

More specifically, "to state a claim of racial [and religious] discrimination under the Equal Protection Clause and section 1983, the plaintiff must allege and prove that (1) he or she received treatment different from that received by similarly situated individuals and that (2) the unequal treatment stemmed from a discriminatory intent." *Fennell*, 804 F.3d at 412 (internal quotation marks and alterations omitted). "Discriminatory [intent] implies that the decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group." *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001) (internal alterations omitted). A plaintiff does not need to establish a prima facie case of discrimination at the pleading stage. *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013). But a plaintiff must plead "sufficient facts on all of the ultimate elements of a disparate treatment claim to make his case plausible." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016).

The Third Amended Complaint contains only generic reference to the Fourteenth Amendment and does not assert specific facts that Z.B. was treated differently from similarly situated students and that this unequal treatment arose from a discriminatory intent. In fact, in the Bhombals' Response to IISD's Motion to Dismiss they fail to even address their Fourteenth Amendment claim or mention an underlying violation of the Equal Protection Clause. *See* Doc. 60,

Pls.' Resp. Thus, IISD argues that the Bhombals have abandoned this claim and it should be dismissed. Doc. 63, IISD's Reply.

The closest argument the Court can find in support of Z.B.'s Fourteenth Amendment claim comes in the Bhombal's Response to IISD's Motion. There the Bhombals argue that Z.B. was deprived of an equal educational opportunity compared to his Caucasian peers as evidenced by him not being allowed to use the restroom, Z.B. telling his parents he did not want to go to school, receiving verbal and physical threats from school officials and students, and being suspended from school. Doc. 60, Pls.' Resp., ¶ 55. However, these generic and conclusory allegations fail to satisfy their burden. As discussed above and in the Court's previous Order, the Bhombals fail to allege that IISD treated Z.B. differently from other similarly situated students outside Z.B.'s protected classes under similar circumstances. Nor does the Complaint plausibly allege that any purported unequal treatment stemmed from discriminatory intent. Thus, the Bhombals have not pleaded "sufficient facts on all of the ultimate elements of a disparate treatment claim to make his case plausible." *Chhim*, 836 F.3d at 470.

Even if the Court were to find that the Bhombals' Third Amended Complaint sufficiently alleged a Fourteenth Amendment constitutional violation, their Complaint fails to allege facts to support governmental entity liability against IISD. To state a claim for municipal liability a plaintiff must plead facts from which the court could reasonably infer: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Valle v. City of Hou.*, 613 F.3d 536, 541–42 (5th Cir. 2010)(internal quotation marks omitted).

"Official policy usually exists in the form of written policy statements, ordinances, or

regulations, but it may also arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *Davenport v. City of Garland*, 2010 WL 1779620, at *2 (N.D. Tex. April 9, 2010) (quoting *Webster v. City of Hou.*, 735 F.2d 838, 841 (5th Cir. 1984)). Here, the Bhombals do not allege that the IISD Board maintained a written policy of treating Indian or Muslim students differently because of their national origin or religion.[9] Instead, the Complaint alleges that "[d]uring the relevant period" the IISD Board "had an actual practice and custom of conscious and deliberate indifference" to federal law and guidance and to the Board's own policies and procedures with respect to the treatment of Z.B. Doc 48, TAC, ¶ 96. The Complaint further alleges that "the District" had a "custom and practice" of refusing to investigate allegations of bullying, harassment, and assault "based upon racial animus," and "custom and practice" of retaliating against Z.B. because of his parents' advocacy on his behalf. *Id.* ¶¶ 97–98.

However, to establish government entity liability based on an alleged custom or practice of IISD and its employees, the Complaint must plead facts demonstrating unconstitutional incidents that "occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of [its] employees." *Webster*, 735 F.2d at 842. "A municipality is almost never liable for an isolated unconstitutional act on the part of an employee." *Davenport*, 2010 WL 1779620, at *2 (citing *Piotrowski*, 237 F.3d at 578). Here, the Complaint does not identify prior instances of Title VI or equal protection violations by IISD against other students, and the Court does not otherwise find the

---

[9] In fact, the Bhombals concede that the IISD Board had policies in place to protect against harassment or discrimination on the basis of race/national origin and religion. *See* Doc. 48, TAC, ¶ 26; *see also* Doc. 49, IISD's Mot. to Dismiss, 16 n.15 (discussing the IISD's Board policy).

allegations sufficient to infer that a widespread discriminatory practice existed. Therefore, because the Court finds that the Bhombals' Complaint fails to adequately allege a Fourteenth Amendment violation or that there was an official policy or custom that caused any purported violation, the Court **GRANTS** IISD's Motion to Dismiss on the Bhombals' Section 1983 claims.[10]

## IV.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** IISD's Motion to Dismiss (Doc. 49) and **DISMISSES** all of the Bhombals' claims. The Court finds that allowing the Bhombals the opportunity to replead their claims is not warranted because the Court has already afforded them repeated opportunities to do so in response to pleading deficiencies highlighted by IISD in prior Motions to Dismiss (Docs. 10 & 49) and this Court's prior Memorandum Opinion and Order (Doc. 22), yet they have still failed to state a claim upon which relief may be granted. *See United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 404 (5th Cir. 2004) (noting that

---

[10] Alternatively, to show governmental entity liability the Bhombals' Complaint alleges that the IISD Board "obviously failed to correctly supervise staff" and "obviously . . . failed to train staff" regarding "laws, regulations and directives," how to address race discrimination complaints, and on "cultural issues regarding persons from the Middle East and India" and "followers of the Islamic faith." Doc. 48, TAC, ¶¶ 99–101. "In a § 1983 claim for failure to supervise or train, the plaintiff must show that: '(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference.'" *Goodman v. Harris Cty.*, 571 F.3d 388, 395 (5th Cir. 2009) (quoting *Smith v. Brenoettsy*, 158 F.3d 908, 911–12 (5th Cir. 1998)). A successful failure to train claim also requires the plaintiff to "allege with specificity how a particular training program is defective." *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 170 (5th Cir. 2010) (quoting *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005)). The Bhombals allegations on their failure to supervise and train theories of liability are wholly conclusory and fail to allege how the current procedures are defective. Instead, the Bhombals' argument simply assumes that based on the way Z.B. was treated "it is clear that the Irving ISD failed in a number of manners and particulars as well, regarding training and supervision of staff." Doc. 60, Pls.' Resp., ¶ 61. This is insufficient to sustain a Section 1983 claim on a failure to supervise or train theory of liability.

"pleadings review is not a game where the plaintiff is permitted to file serial amendments until he finally gets it right"); *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003) (holding leave to amend was properly denied where the plaintiff had previously filed two amended complaints). Therefore, the Court finds that further amendment would be futile, and thus, the Court **DISMISSES with prejudice** the Bhombals' claims against IISD under Title VI for race-based discrimination, retaliation, and student-on-student harassment; and under Section 1983 for violations of the Fourteenth Amendment, Title VI, and failure to train or supervise employees. Final Judgment to follow.

**SO ORDERED.**

**SIGNED: June 28, 2019**.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE